Although I concur in the result of Justice Cook's opinion, abating the second-filed individual action in favor of the first-filed class *Page 222 
action, I write separately to explain my distinct rationale. The Tidmore-Bell action, with class-action allegations, was filed on August 3, 1995.[4] The Payne action, an individual action, was filed on January 24, 1996. The Tidmore-Bell class action was certified on February 21, 1996. Facing the same plaintiff — Payne as a class member and Payne as an individual — in two different courts on the same cause, the defendant, State Mutual Insurance Company ("State Mutual"), sought to have the action that was filed second, the Payne individual action, abated.
Section 6-5-440 provides:
 "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party.
In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
(Emphasis added.)
The purpose of this statute is to protect a party currently defending one action from having to defend another action subsequently filed in a different court by the same plaintiff, or class of plaintiffs, "for the same cause" — "the pendency of the former is a good defense to the latter." See L.A. Draper Son v. Wheelabrator-Frye, Inc., 454 So.2d 506 (Ala. 1984). Although the Tidmore-Bell class was not certified before Payne filed her individual action, the class action was commenced
first, and it is commencement[5] to which the statute looks. Certification relates back to the original date of filing, August 3, 1995 — before Payne filed her individual action on January 24, 1996.[6] Thus, Payne was a plaintiff in the class action as of August 3, 1995. She was not a plaintiff in the individual action until January 24, 1996. The plain language of § 6-5-440 provides that State Mutual may use the pendency of the "former" (the class action) as "a good defense to the latter" (the individual action). Therefore, in my view, §6-5-440 requires the abatement of the second-filed, individualPayne action in favor of the first-filed Tidmore-Bell class action.[7]
Justice Cook construes § 6-5-440 to apply only in certain instances. On the one hand, he states that the abatement statute, § 6-5-440, applies only to competing individual actions because, he says, the concept of abatement is "repugnant" to class action practice. On the other hand, Justice Cook, in his special writing in Ex parte CiticorpAcceptance Co., 715 So.2d 199 (Ala. 1997), states that where there are competing class actions, the court in which the second class action is filed *Page 223 
has no subject matter jurisdiction.[8] (Citing Ex parte LibertyNat'l Life Ins. Co., 631 So.2d 865 (Ala. 1993)). This deprivation of subject matter jurisdiction appears to constitute a common-law abatement identical to the abatement of § 6-5-440, as acknowledged by this Court in Liberty National, 631 So.2d at 867, which expressly cited § 6-5-440. Thus, in Justice Cook's view, abatement appears to be repugnant only to certain class actions — those for which there is a competing individual action (i.e., hybrid situations).
In the present case, Justice Cook construes § 6-5-440 as inapplicable to hybrid situations for four reasons. First, Justice Cook states that § 6-5-440 does not apply to hybrid situations because if it did so it would cause litigation "chaos." 715 So.2d at 214 This conclusion is correct only if §6-5-440 is misread to trigger abatement upon the class certification, instead of upon the filing of the action. As Justice Cook points out, Ex parte First National Bank ofJasper, 675 So.2d 348 (Ala. 1995) (FNB of Jasper I), which adopted a first-to-certify approach instead of a first-to-file approach, led to a race to certification. This result is avoided, of course, by adhering to the plain words of the statute, which provide that the first action to be "commenced," or filed, abates subsequently filed actions.
Second, Justice Cook states that § 6-5-440 does not apply to hybrid situations because its application to such situations would not prevent vexatious and oppressive litigation by members of the class. He reasons that because members of the class generally will not even be aware of a parallel individual action, § 6-5-440 is not needed to prevent them from filing such an action. This argument misconceives the focus of §6-5-440 as preventive, instead of as protective. The fundamental purpose of § 6-5-440 is to protect a defendant from having to defend the same cause of action against the same plaintiff in multiple courts. See L.A. Draper Son, supra. Section 6-5-440 serves this protective purpose by abating subsequently filed class or individual actions regardless of whether some or even most class members fail to realize the impact on the defendant.
Third, Justice Cook states that to apply § 6-5-440 to parallel class and individual actions would permit a plaintiff in a first-filed individual action, who is also a class member in a second-filed class action, to continue his individual action. Indeed, if a plaintiff in a first-filed individual action is included in the class encompassed by a second-filed class action, § 6-5-440 will abate the second-filed class action to the extent of that individual's membership in the class. Thereafter, the defendant will face two actions by the different plaintiffs — the first-filed individual action and the second-filed class action excluding that individual — and § 6-5-440 will not require further abatement.[9] While allowing continued prosecution of first-filed individual actions may be inefficient, the certainty and predictability[10] afforded by allowing such *Page 224 
prosecution contrast favorably with the inconsistencies inherent in the application of the "myriad" equitable factors adopted by Justice Cook.[11] The Legislature made the policy choice in favor of predictability when it enacted § 6-5-440 without a special provision inhibiting plaintiffs from continuing their first-filed individual actions.
Finally, Justice Cook states that § 6-5-440 is redundant, given the equitable powers of the courts to make case-by-case rules of practice and procedure for class actions. Of course, where the Legislature has specifically addressed an area of practice and procedure with a statute, that statute, and not our inherent equitable powers, should govern the particular subject addressed by the Legislature. See Reynolds v. FirstAlabama Bank, 471 So.2d 1238, 1243 (Ala. 1985).
Justice Cook advances a patchwork of rules that result in the application of: (1) statutory abatement, § 6-5-440, to situations involving competing individual actions; (2) common-law abatement to situations involving competing class actions; and (3) "myriad" equitable factors to hybrid situations. Because the Legislature made no exception in §6-5-440 for these different kinds of situations, I would apply the uniform, first-to-file abatement rule of § 6-5-440 to all of the situations.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
[4] Even though the motion to certify the Tidmore-Bell class was filed after Payne had filed her individual action, this Court has held that a certification motion is not determinative of whether an action is a class action. Bagley v. City of Mobile,352 So.2d 1115, 1118 (Ala. 1977). Regardless of the time of the certification motion, the Tidmore-Bell action contained class-action allegations that made it a class action, in substance, from the time it was commenced.
[5] Both Ala. Code 1975, § 6-5-440, and Rule 23(c)(1), Ala. R. Civ. P., focus on the "commencement" of the action. See § 6-5-440
("the pendency of the former is a good defense to the latter ifcommenced at different times") (emphasis added); Rule 23(c)(1), Ala. R. Civ. P. ("As soon as practicable after the commencement
of an action brought as a class action, the court shall determine . . . whether it is to be so maintained.") (emphasis added).
[6] By operation of Rule 23, Ala. R. Civ. P., each of the members of the class will be deemed a party to all of the pleadings filed since, and including, the initial complaint. See generally United States Parole Comm'n v. Geraghty,445 U.S. 388, 404-05 n. 11, 100 S.Ct. 1202, 1213, 63 L.Ed.2d 479 (1980) (stating that class certification relates back to the commencement of the action); 13A C. Wright, et al., FederalPractice and Procedure § 3533.9, at 411 (1984) (stating that the certification of a class action relates back to the commencement of the action).
[7] I note that in situations involving the certification of a class, the trial court must conduct a rigorous analysis of the certification factors before granting even conditional certification, see Ex parte Citicorp Acceptance Co.,715 So.2d 199 (Ala. 1997), or conditional certification for settlement purposes, see Ex parte First National Bank of Jasper,717 So.2d 342 (Ala. 1997) (See, J., concurring in result) (citing AmchemProducts, Inc. v. Windsor, ___ U.S. ___, ___ _ ___,117 S.Ct. 2231, 2241-42, 138 L.Ed.2d 689 (1997)). This requirement for a rigorous analysis strongly disfavors ex parte conditional certifications. Citicorp, 715 So.2d at 203.
[8] In his opinion concurring in the result in Citicorp, 715 So.2d at 205, Justice Cook, in addressing the abatement of competing class actions, writes:
 "[T]rial courts are to return to the rule applied in Ex parte Liberty National Life Insurance Co., 631 So.2d 865 (Ala. 1993). Under that rule, the first court in which a complaint containing class allegations is filed has exclusive jurisdiction of the action until that court affirmatively decides whether or not a class certification is proper."
Depriving a court of subject matter jurisdiction over a second-filed action constitutes abatement whether it is denominated as such or not. This conclusion is reinforced by the citation to § 6-5-440 in Ex parte Liberty National, 631 So.2d at 867.
[9] Of course, the plaintiff in the first-filed individual action could become part of the class in the second-filed action by simply petitioning the court in which the class action is filed for inclusion in the class upon the dismissal of his individual action and then dismissing his individual action.
[10] An indispensable characteristic of a sound legal system is the production of predictable results, which guards against the arbitrary use of governmental power and allows the bench, the bar, and, most importantly, the people to order their affairs. As Justice Holmes stated:
 "People want to know under what circumstances and how far they will run the risk of coming against what is so much stronger than themselves [i.e., public enforcement of judicial decrees], and hence it becomes a business to find out when this danger is to be feared. The object of our study, then, is prediction, the prediction of the incidence of public force through the instrumentality of the courts."
Oliver Wendell Holmes, Jr., The Path of the Law, in Collected Legal Papers 167, 167 (Legal Classics Lib. ed. 1982).
[11] For example, a cursory comparison of the two approaches yields the following results:
Action Date Justice Cook § 6-5-440[fn**] ---------- ------ — ------------ --------------- Individual 1/1/98 ?[*] Not Abated
Class 2/1/98 Not Abated Not Abated
Individual 3/1/98 ?[*] Abated
Class 4/1/98 Abated Abated
[*] Abatement determination made pursuant to myriad equitable factors.
[**] Abatement determination made pursuant to abatement statute.